IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN HECTOR MARTINEZ,<br><br>                    Petitioner,<br><br>           vs.<br><br>DANIEL PARAMO, Warden, Richard J.<br>Donovan Correctional Facility,[1]<br><br>                    Respondent. | No. 2:12-cv-3063-JKS<br><br>MEMORANDUM DECISION |

Steven Hector Martinez, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254.  Martinez is currently in the custody of the California Department of Corrections and Rehabilitation and is incarcerated at the Richard J. Donovan Correctional Facility in San Diego, California.  Respondent has answered.  Martinez has not replied.

I. BACKGROUND/PRIOR PROCEEDINGS

The California Court of Appeal recounted the factual background of this case as follows:

> On the afternoon of April 18, 2009, Mario Tamayo was at Bistro 33 in Davis, celebrating UC Davis "Picnic Day" with friends.  Tamayo was in the restaurant's patio, where he was "buzzing" after consuming three to four cocktails.
> A fight broke out in the patio and progressed to outside the patio fence.  Tamayo and his party moved out to the street to see the commotion.  The fight broke up, and Tamayo asked one of the participants why they fought.  As Tamayo walked back to the restaurant, a man came up from behind and punched him in the right eye, causing two orbital fractures.  Tamayo could not describe his assailant at trial, but admitted telling the

---

[1]   Daniel Paramo, Warden, Richard J. Donovan Correctional Facility, is substituted for the People of the State of California.  FED. R. CIV. P. 25(c).

police the assailant was a Hispanic man with black baggy shorts or pants and a black Dickies brand shirt.

The assailant left the scene with three or four other men; Tamayo tried to follow but was bleeding very badly and never caught up. He later met police officers in a cul-de-sac with some people who looked like they were from his assailant's group. Tamayo, who was very upset, told an officer two of the people had been with his assailant, but testified he was not 100 percent sure at the time. Tamayo then identified [Martinez] as the assailant in a show-up. [Martinez] was the only person in the police car when Tamayo identified him.

Brendan Goodman went to the Davis Picnic Day with his girlfriend and family on April 18, 2009. As he approached Bistro 33, Goodman heard a verbal altercation to his right, and then saw one man throw punches at another man. The incident took place during the afternoon on a sunny day. Goodman was about 25 feet away, and nothing obstructed his view of the attack.

According to Goodman, the assailant was a stocky Hispanic man with a lot of tattoos, a mustache, wearing a white tank top undershirt and darker pants. Goodman identified [Martinez] as the assailant at trial.

[Martinez] was face-to-face with the victim when he struck the victim three times. The victim stumbled and grabbed his glasses after the assault, while [Martinez] and three other men continued down G Street. Goodman then called the police and followed [Martinez's] group, maintaining visual contact and describing their whereabouts to the police dispatcher.

Goodman did not break off the pursuit until a police officer contacted the men. He did not contact the officer because Goodman wanted to conceal his identity. Goodman later agreed to view the suspect at the police station, where he identified [Martinez] as the assailant. He was absolutely certain when he made the identification at the police station, and remained certain about [Martinez's] identity at trial.

On the day of the incident, Davis Police Officer Mike Munoz was dispatched to an assault at the intersection of Third and G Streets. Officer Davis received continuous updates from dispatch as he approached, and learned the assailant was part of a group of four Hispanic males. Dispatch told Officer Davis that one of the men wore a black tank top and white hat, another wore a gray hat, while a third man had a white tank top and tattoos.

Officer Davis saw one suspect entering a Goodwill store, and three other suspects exiting a car wash and crossing I Street. [Martinez], who wore black shorts with a white tank top and was heavily tattooed, was in the group of three men exiting the car wash. Noting [Martinez] closely fit a description given by dispatch, Officer Davis got out of his patrol car and asked the men to talk to him. They agreed, and Officer Davis eventually detained [Martinez] and placed him in the back seat of the patrol car.

Tamayo soon came to the scene. Officer Davis observed that Tamayo was very upset, had cuts above and below his right eye, and smelled of alcohol. Tamayo told Officer Davis that two of the men were from his assailant's group. Officer Davis read a field admonishment to Tamayo and took him to the police car, where Tamayo identified

[Martinez] as his assailant. Tamayo said he was "real sure" that [Martinez] was his assailant.

Officer Davis later talked to Goodman, who described the assailant as a Hispanic male with a white tank top and tattoos. Goodman agreed to participate at an identification through a one-way mirror at the police station. Officer Davis admonished Goodman regarding identifications, and Goodman identified [Martinez] as the assailant. Officer Davis believed [Martinez] was wearing handcuffs when Goodman identified him. Asked what he recognized about [Martinez], Goodman said that [Martinez] was a Hispanic male with a mustache, tattoos on the upper arms and body, a narrow waist, white tank top, and black shorts.

The first jury impaneled was unable to reach a verdict, and the trial court declared a mistrial. A second jury was impaneled and found Martinez guilty of battery causing serious bodily injury. The trial court sustained allegations of two strikes, two prior felonies, and one prior prison term, and sentenced Martinez to 31 years to life in state prison.

Through counsel, Martinez directly appealed, arguing that: 1) there was insufficient evidence to support his conviction; 2) the admission of gang evidence violated his federal rights to due process and a trial by jury; 3) trial counsel was ineffective for failing to object to the gang testimony; 4) the prosecution committed misconduct during closing argument; 5) trial counsel was ineffective for failing to object to the prosecution's alleged misconduct; 6) the existence of cumulative error warranted reversal of his conviction; 7) the trial court abused its discretion in denying his motion to dismiss one of the strikes; 8) the trial court miscalculated his presentence conduct credits; and 9) the trial court should have stricken one of his serious prior felony convictions. The Court of Appeal recalculated the conduct credits, awarding 210 days in Martinez's favor, and struck one of his serious felony enhancements. Martinez's sentence was apparently reduced to 25 years to life. The court otherwise affirmed the judgment of conviction in a reasoned opinion.

Martinez filed a counseled petition for review to the California Supreme Court, again arguing that: 1) there was insufficient evidence to support his conviction because it largely rested on eyewitness identification; 2) the admission of gang evidence violated his federal rights to due process and a trial by jury; 3) counsel was ineffective for failing to object to the admission of the gang testimony; 4) the prosecution committed misconduct in closing argument; 5) trial counsel was ineffective for failing to object to the alleged misconduct; and 6) his sentence amounted to cruel and unusual punishment. The California Supreme Court summarily denied review.

Martinez timely filed his *pro se* Petition for a Writ of Habeas Corpus with this Court on January 20, 2013.

## II. GROUNDS RAISED

In his Petition before this Court, Martinez argues that: 1) the evidence was insufficient to support his conviction because the case largely turned on eyewitness identification, which is "inherently unreliable"; 2) the complaining witness's gang references denied him his federal rights to due process and a trial by jury; 3) the prosecution committed unidentified misconduct; and 4) his sentence was cruel and unusual.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that

contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Martinez has not replied to Respondent's answer. The relevant statute provides that "[t]he allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." 28 U.S.C. § 2248; *see also Carlson v. Landon*, 342 U.S. 524, 530 (1952). Where, as here, there is no traverse filed and no

evidence offered to contradict the allegations of the return, the court must accept those allegations as true. *See Phillips v. Pitchess*, 451 F.2d 913, 919 (9th Cir. 1971).

## IV. DISCUSSION

Claim One: Insufficient Evidence to Support the Conviction

Martinez first argues that "[b]ecause the conviction rested almost entirely on eyewitness identification, and because eyewitness identification is inherently unreliable, the evidence in this case was insufficient as [a] matter of law."

The Court of Appeal rejected this contention as follows:

> [Martinez] contends the identification testimony was insufficient as a matter of law to support his conviction. He is wrong.
> "'To determine the sufficiency of the evidence to support a conviction, an appellate court reviews the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt.'"
> [Martinez] begins by asserting eyewitness testimony is generally unreliable. He notes that Tamayo was under the influence of alcohol when he identified [Martinez] to the police. Also, [Martinez] asserts the out-of-court identifications were made under questionable circumstances—[Martinez] was alone in a police car when Tamayo identified him, and Goodman identified [Martinez], who was alone in a room, through a one-way mirror.
> "'It is well settled in California that one witness, if believed by the [trier of fact], is sufficient to sustain a verdict. To warrant the rejection by a reviewing court of statements given by a witness who has been believed by the [trier of fact], there must exist either a physical impossibility that they are true, or it must be such as to shock the moral sense of the court; it must be inherently improbable and such inherent improbability must plainly appear.'"
> Neither Tamayo's nor Goodman's identification of [Martinez] was inherently improbable. Although Tamayo recently drank and smelled of alcohol when he made the identification, he did not otherwise appear intoxicated to Officer Davis. [Martinez] was not in a lineup when he was identified by Goodman or Tamayo, but both witnesses were admonished that they were not obligated to identify anyone and not to assume or guess anything about the suspect's involvement.
> Goodman was only 25 feet away and had an unobstructed view as [Martinez] hit Tamayo. Goodman then followed [Martinez] and gave a detailed description of him to the dispatcher, which Goodman later reiterated to Officer Davis. [Martinez] clearly stood

out to Officer Davis as the person described by the dispatcher.  Goodman was certain of his identification at the police station and at trial.  His identification of [Martinez], together with Tamayo's, is sufficient evidence to support [Martinez's] conviction.

As articulated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see also McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard).  This Court must therefore determine whether the California court unreasonably applied *Jackson*.  In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial.  *Jackson*, 443 U.S. at 318-19.  Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution."  *Id.* at 326.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law.  *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).  Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set forth in state law.  *Jackson*, 443 U.S. at 324 n.16.  This Court must also be ever mindful of the deference owed to the trier of fact and the sharply limited nature of constitutional sufficiency review.  *Juan H. v. Allen*, 408 F.3d 1262, 1275 (9th Cir. 2005).  A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on

direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam); *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

In order establish battery resulting in serious physical injury under California law, the People must prove: 1) a person used physical force or violence against another person; 2) the use of force or violence was willful and unlawful; and 3) the use of force or violence inflicted serious bodily injury. *People v. Lewis*, 16 Cal. Rptr. 3d 498, 502 (Cal. Ct. App. 2004). Serious bodily injury is defined as including bone fractures. CAL. PENAL CODE § 243(f)(4). Here, Tamayo identified Martinez as the man who struck him three times in the face, apparently without provocation of any sort, causing two orbital fractures. Goodman was also certain that Martinez, who he followed and described to police after observing him punch Tamayo in the face, was the perpetrator. As under California law, this circuit has held that "the testimony of one witness, if solidly believed, is sufficient to prove the identity of a perpetrator of crime." *United States v. Smith*, 563 F.2d 1361, 1363 (9th Cir. 1977). "When there is some corroboration of that testimony, even greater reason exists for upholding the verdict of a jury which accepted it." *Id.* The determination of whether either Tamayo or Goodman's identifications were credible was the sole province of the jury. *See United States v. Ginn*, 87 F.3d 367, 369 (9th Cir. 1996) (concluding that there was sufficient evidence to support the conviction, even where there were discrepancies in eyewitness descriptions of the perpetrator, because it was up to the trier of fact to determine whether the identifications were credible and the prosecutor was not required to present corroborating eyewitness identifications); *Coleman v. Sisto*, No. 2:09-cv-0020, 2012 WL

6020095, at *13 & n.9 (E.D. Cal. Dec. 3, 2012).  There was sufficient evidence to support the jury's finding that Martinez willfully and unlawfully punched Tamayo in the face causing serious bodily injury, and this Court therefore rejects Martinez's claim.

Claim Two: Admission of Gang Evidence

Martinez next argues that "[t]he admission of gang evidence denied [him] due process of law and the right to a jury trial under the federal constitution."  Martinez also mentions that defense counsel failed to object to the testimony at issue.

The Court of Appeal described the factual basis of this claim as follows:

> Although the trial court granted [Martinez's] in limine motion to exclude any reference to [his] history of gang involvement, Tamayo's trial testimony contained incidental references to gangs.  He referred to the people detained by the police, which included [Martinez], as "gangbangers."  Later, when addressing his reluctance to testify due to fear for his safety, Tamayo said, "It's been around, so, yes, people like that, and they don't really man up.  They do stupid [things]."  Finally, when explaining how he could distinguish the men who were fighting from the rest of the crowd, Tamayo noted how he could "tell a group of gangbangers [from] your average college students."

The court denied Martinez relief, concluding that his failure to object at trial forfeited any contention that the testimony was improperly admitted.  The court further concluded that counsel was not ineffective in failing to object to Tamayo's testimony because the choice of when to object is inherently a matter of trial tactics not ordinarily reviewable on appeal, and that Martinez was not prejudiced in any event.  The court continued:

> Tamayo made two brief, passing references to the participants in the street fight as "gangbangers."  He made no direct reference to [Martinez] being in a gang, or that [Martinez] was a member of a particular gang.  Tamayo did not describe the nature or characteristics of a gang or its members, nor was there testimony to suggest [Martinez] belonged to a criminal street gang.  Tamayo's other statement, that he was afraid to testify because people do stupid things, does not even make an indirect reference to [Martinez's] alleged gang membership.
> The evidence of [Martinez's] guilt was compelling—[Martinez] was identified by two eyewitnesses, whose respective identifications were largely consistent.  Goodman

gave a detailed description of the perpetrator to the 911 dispatcher. This description closely matched [Martinez], and allowed the police to find [Martinez] soon after the crime was committed. The prosecution made no references to the gang testimony in its closing argument. The brief, general references to gangs did not prejudice [Martinez].

Federal habeas review of a claim is barred where a state prisoner has defaulted his federal claim in state court pursuant to an adequate and independent state procedural rule. *Coleman v. Thompson,* 501 U.S. 722, 750 (1991). In order to preclude federal review, a state court must have relied on a procedural bar as the basis for its disposition of the case. *Harris v. Reed,* 489 U.S. 255, 261-62 (1989). Here, the state court expressly ruled that review of Martinez's claim was precluded by his failure to object to the testimony at trial. *See* CAL. EVID. CODE § 353(a) ("A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless . . . [t]here appears of record an objection to or a motion to exclude or to strike the evidence."); *People v. Ervin*, 990 P.2d 506, 523 (Cal. 2000) (failure to object to admission of evidence at trial waives argument on appeal). "It is well-established that California's contemporaneous objection requirement is independent of federal law. California law has long required a defendant to make a timely and specific objection at trial in order to preserve a claim for appellate review." *Carpenter v. Ayers*, 548 F. Supp. 2d 736, 746 (N.D. Cal. 2008). Federal habeas review is therefore barred unless Martinez can show "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Martinez has not made such a showing.

In any event, Martinez's claim does not warrant relief. To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.

466 U.S. 668, 687 (1984).  A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.*  The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief.  *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95.  Thus, Martinez must show that his counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.  *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985).  An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs.  *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

Even assuming defense counsel was deficient in failing to object, Martinez has not established that the outcome would have been different had counsel timely objected.  As the Court of Appeal concluded, the evidence against Martinez, which included two eyewitnesses who identified him as the perpetrator, was compelling.  Accordingly, Martinez is not eligible for relief on this claim.

Claim Three: Prosecutorial Misconduct

Martinez next argues that "[t]he prosecutor committed prejudicial misconduct."  He has, however, failed to identify in his Petition the conduct he found to be objectionable.  On direct appeal, however, Martinez argued that the prosecution committed misconduct during summation

by criticizing the defense as a "common ploy" it called "smoke and mirrors." The prosecution further told the jury to "[c]onvict Mr. Martinez because he is definitely guilty."

The Court of Appeal denied Martinez relief on this claim as follows:

> [Martinez] did not object to any of the prosecutor's comments. To the extent that any of the comments were objectionable, we shall see they could easily have been cured by an admonition from the judge. Accordingly, [Martinez] has forfeited his claims of prosecutorial misconduct. . . .
> On rebuttal, the prosecutor responded to defense counsel's closing argument as follows: "What we have with the defense case is a common ploy called smokey [sic] mirrors. My brother used to do this to me when I was little. What he would do is, 'Hey, look at this hand. Look over here and look over here,' and as soon as I would, he would smack me with the other one. As I grew up, I finally figured out what to do when my brother would say 'look over here, look over here.' You take a step back. Just like I'm asking you to do. You take a step back so you are out of the smoke. Out of the shine of what the defense is trying to do and you take a look at all of the evidence."
> Later, when referring to defense arguments concerning inconsistent testimony over the color of a hat worn by a member of [Martinez's] group, the prosecutor said, "I'll concede. If that hat was on trial here today, you would have to let the hat go free. That you couldn't convict the hat. However, step back from the smoke and mirrors. Step back from the person with his hand up who's about to smack you because this is [Martinez's] trial. And in this trial, you have multiple eyewitnesses who watched what he did and what that was [was to] shatter Mario Tamayo's eye. So acquit the hat. That's fine. Let the hat go free. Convict [Martinez] because he is definitely guilty."
> References to counsel's argument as "smoke and mirrors" is not misconduct since it is a permissible comment on opposing counsel's arguments rather than a personal attack on counsel.
> Nor did the prosecutor commit misconduct by asking the jury to convict [Martinez] because he is "guilty." It "is misconduct for prosecutors to vouch for the strength of their cases by invoking their personal prestige, reputation, or depth of experience, or the prestige or reputation of their office[.]" Asking the jury to convict [Martinez] because the evidence shows he is guilty does neither.

Again, this claim is procedurally defaulted because counsel failed to object at trial and Martinez has not shown cause or prejudice or a miscarriage of justice. *Coleman*, 501 U.S. at 750; *see also Hernandez v. Smith*, 100 F. App'x 615, 617 (9th Cir. 2004) (petitioner's claim that prosecutor committed misconduct during closing argument was procedurally defaulted because he failed to object and request a curative instruction as required by state law). In any event, the

Court of Appeal's determination was not unreasonable or contrary to federal law. A petitioner's due process rights are violated when a prosecutor's misconduct renders a trial "fundamentally unfair." *Darden v. Wainwright,* 477 U.S. 168, 178-181 (1986); *Smith v. Phillips,* 455 U.S. 209, 219 (1982) ("the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor"). Under *Darden,* the first issue is whether the prosecutor's remarks were improper; if so, the next question is whether such conduct infected the trial with unfairness. *Tak Sun Tan v. Runnels,* 413 F.3d 1101, 1112 (9th Cir. 2005).

The Court of Appeal reasonably concluded that the prosecutor's comments were not improper. The prosecutor's characterization of the defense as a "common ploy" of "smoke[] and mirrors" was directed at the strength of the defense on the merits, and did not amount to an improper disparagement of defense counsel. *United States v. Ruiz,* 710 F.3d 1077, 1086 (9th Cir. 2013) (prosecution's characterization of defense's case as "smoke and mirrors" was not improper where comment was directed to strength of the case and was not an *ad hominem* attack on defense counsel) (citations omitted); *Williams v. Borg*, 139 F.3d 737, 744-45 (9th Cir. 1998) (calling defense counsel's argument "trash" during closing argument did not amount to prosecutorial misconduct); *Hernandez*, 100 F. App'x at 617 (calling the defense "smoke and mirrors" was not prosecutorial misconduct).

In closing argument, defense counsel urged the jury to "apply . . . the law and come up with the only right decision in this case, which is not guilty." The prosecution responded in rebuttal that, on the contrary, the jury should "[c]onvict Mr. Martinez because he is definitely guilty." This was not improper; rather, the prosecution's comment was invited by or responsive

to defense counsel's closing argument. *See Darden*, 477 U.S. at 182. Moreover, the prosecutor was not injecting his view of the evidence in an attempt to induce the jury to trust his judgment rather than its own view of the evidence. *Cf. Sechrest v. Ignacio*, 549 F.3d 789, 810-11 (9th Cir. 2008). Instead, when viewed in context, the prosecutor was commenting on the strength of the evidence, including defense counsel's arguments concerning inconsistent testimony over the color of a hat worn by a member of Martinez's group. Collectively, the prosecution's statements come nowhere near comments that "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). Martinez is accordingly not entitled to relief on this claim.

Claim Four: Cruel and Unusual Punishment

In the heading of his final claim, Martinez argues that his sentence is cruel and unusual. He failed to raise this claim on direct appeal and accordingly it is deemed unexhausted. Exhaustion of state remedies requires the petitioner to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995).

In the body of his argument, however, Martinez argues that the trial court abused its discretion in failing to dismiss one of his prior felony strikes. Martinez did bring this claim on direct appeal, which the Court of Appeal resolved against him as follows:

> [Martinez] contends it was an abuse of discretion for the trial court to deny his motion to strike one of his two prior strike convictions in the interest of justice. ([CAL. PENAL LAW] § 1385.) We disagree.
> A trial court may exercise its discretion under section 1385 to strike a finding that a prior conviction comes within the meaning of section 667, subdivision (d), if, and only if, a defendant can be "deemed outside the . . . spirit" of the statute, giving "preponderant weight" to inherent statutory factors (such as the background, character, and prospects of a defendant, as well as the nature and circumstances of the present and previous felony

> convictions) and ignoring any factors extrinsic to the statute (such as court congestion or antipathy to the sentencing consequences for the defendant).
>
> The burden is on [Martinez] to demonstrate that the trial court's decision was irrational or arbitrary, rather than being one of alternative reasonable readings of the facts before the court. [Martinez] must overcome a "strong" presumption that a court's denial of a request to exercise discretion under section 1385 is proper.
>
> In 1996, [Martinez], a Sureño gang member, fired multiple shots from a semiautomatic pistol into a crowd of rival gang members, hitting a 16-year-old male and a 19-year-old. [Martinez] pleaded no contest to two counts of assault with a semiautomatic firearm (§ 245, former subd. (b)) and was given six years of probation with 365 days of jail time and a suspended nine-year state prison sentence. Probation was terminated and the suspended prison term was executed when [Martinez] later sustained a felony theft conviction in Colorado.
>
> [Martinez] was disciplined in prison for five separate incidents of battery on another inmate or mutual combat, and one time for possession of a controlled substance and five syringes. [Martinez] committed the current offense three months after he was paroled from the strike convictions. While in jail awaiting trial in this case, [Martinez] assaulted fellow prisoners on two separate occasions. At least one of the assaults was on a rival gang member.
>
> [Martinez] asserts the trial court should have struck one of his prior strikes because: (1) both strike convictions arose out of the same incident; (2) he was given probation for the two strike convictions; and (3) his instant offense is neither a serious nor a violent felony.
>
> A trial court may, but is not required to, exercise its discretion to strike a prior strike conviction where the prior strikes arise from a single incident with a single victim or a single act. Here, [Martinez's] strike convictions involve two separate victims and more than one act—his repeatedly firing a handgun into a crowd of people. The initial grant of probation for [Martinez's] strike convictions does not exempt them from the three strikes law. (§ 1170.12, subd. (b)(1).) Furthermore, [Martinez's] current offense is a serious felony. (§ 1192.7, subd. (c)(8).
>
> [Martinez] was given a break by getting probation following his conviction for two serious felonies. He has repaid society by committing a felony in another state, repeatedly engaging in violent acts in prison, and committing the current offense within three months of being given his freedom. He is the type of violent, career offender for whom the three strikes law was designed. It was not an abuse of discretion for the trial court to deny his section 1385 motion.

As an initial matter, even if the trial court abused its discretion in denying Martinez's motion to strike one of his two prior strike convictions, such error does not warrant habeas relief. Although the Ninth Circuit has suggested that an abuse of discretion may also amount to a constitutional violation, *see Schell v. Witek*, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc), the

-15-

Supreme Court has never held that abuse of discretion is an appropriate basis for granting federal habeas relief.[2]  Indeed, quite to the contrary, the Supreme Court has strongly suggested that, while abuse of discretion is an appropriate standard on direct review, in a federal habeas proceeding it is not.  *Renico v. Lett*, 559 U.S. 766, 772-73 (2010) ("It is not even whether it was an abuse of discretion for her to have done so–the applicable standard on direct review.  The question under AEDPA is instead whether the determination of the Michigan Supreme Court that there was no abuse of discretion was "an unreasonable application of . . . clearly established Federal law." (quoting § 2254(d)(1))).  In any event, the Ninth Circuit has held that this is a state law claim not cognizable on federal habeas review.  *Brown v. Mayle*, 283 F.3d 1019, 1040 (9th Cir. 2002), *vacated on other grounds*, *Mayle v. Brown*, 538 U.S. 901 (2003).

To the extent that Martinez claims that his sentence was cruel and unusual, it is also without merit.  The Eighth Amendment, applicable to the States through the Fourteenth Amendment, proscribes the infliction of "cruel and unusual punishments."  U.S. CONST. amend. VIII; *Kennedy v. Louisiana*, 554 U.S. 407, 419 (2008).  In determining whether to infer gross disproportionality, a federal court should examine whether a petitioner's sentence is justified by the gravity of his triggering offense and his criminal history, a process similar to the three-pronged approach employed by California state courts.  *See Ramirez v. Castro*, 365 F.3d 755, 768 (9th Cir. 2004).  The contours of the "gross disproportionality principle" have been called

---

[2]  At one time, the Ninth Circuit viewed a state court ruling to be "objectively unreasonable" if it amounted to a clear error.  *Van Tran v. Lindsey*, 212 F.3d 1143, 1152-54 (9th Cir. 2000).  This is the test the Ninth Circuit uses in reviewing a trial court decision under the abuse of discretion standard.  *United States v. Ressam*, 679 F.3d 1069, 1086 (9th Cir. 2012) (en banc).  The Supreme Court noted *Van Tran's* statement of the test and expressly rejected it as inappropriate under the AEDPA.  *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003) (clear error standard is insufficiently deferential to state courts).

"unclear," and the principle is applicable only in the "exceedingly rare" and "extreme" case. *Lockyer*, 538 U.S. at 72-73; *see also Rummel v. Estelle*, 445 U.S. 263, 272 (1980) ("Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare.").

Here, the California courts upheld Martinez's sentence for 25 years to life where he was convicted of battery causing serious bodily injury after punching Tamayo three times in the face, causing two orbtial fractures. Martinez was clearly the aggressor; there is no indication that Tamayo provoked him or had any interaction with Martinez at all prior to being attacked by him in what appears to be a random act of violence and showmanship. Martinez has a serious history of violence against others both inside and outside of prison. As the Court of Appeal noted, Martinez has demonstrated himself to be a "violent, career offender." His is not "the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Ewing v. California*, 538 U.S. 11, 30 (2003) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1005 (1991) (Kennedy, J., concurring in part and concurring in judgment)). Martinez therefore cannot prevail on his fourth and final claim.

## V. CONCLUSION AND ORDER

Martinez is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree

with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals.  *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

    The Clerk of the Court is to enter judgment accordingly.

    Dated: May 6, 2014.

                                                /s/James K. Singleton, Jr.
                                                JAMES K. SINGLETON, JR.
                                                Senior United States District Judge